UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | 25-CR-127-BAH |
| **STEPHAN FREEMAN** | : | |

### EMERGENCY MOTION FOR REVIEW AND MEMORANDUM IN SUPPORT OF <u>PRETRIAL RELEASE</u>

Stephan Freeman, through the undersigned counsel, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Freeman] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Freeman's appearance at court and the safety of the community. It is the government's burden to show either (1) by a preponderance of the evidence that Mr. Freeman is a risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community. The government has not and cannot meet that burden. Mr. Freeman has strong ties to the greater DMV area, a limited and non-violent criminal history, and a young son who relies on him and are able to support him during his release. Mr. Freeman asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

**I.     Background**

Mr. Freeman was arrested on April 21, 2025 on the 5000 Block of C Street SE. The officers stopped the men outside of a gold Lexus SUV after seeing saw what they believed to be a marijuana cigarette in the hands of one of the men. After approaching the SUV, the officers noticed what they believed to be an open container of alcohol. They subsequently arrested the men, one of whom

as Mr. Freeman. After handcuffing the men, the officers searched the car and located a gun in a backpack. Mr. Freeman was subsequently charged with unlawful possession of a firearm in Superior Court. On April 25, 2025, a complaint related to the April 21 arrest was filed in this court. On May 1, 2025, an indictment was returned charging Mr. Freeman with one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C § 922(g)(1).

The government moved to detain Mr. Freeman pending trial pursuant to 18 U.S.C. §§ 3142(d)(1)(A)(iii) and 3142(f)(1)(E). At a detention hearing on May 2, 2025, Magistrate Judge Upadhyaya granted the government's motion. Mr. Freeman now seeks review by this Court and respectfully requests this Court release Mr. Freeman on conditions of release.

**II.     Legal Standard**

Title 18 United States Code Section 3145(b) provides that if "a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." And "[t]he motion shall be determined promptly." *Id.* This Court reviews the determination of the magistrate judge *de novo*. *See United States v. Blackson*, 2023 WL 1778194, *5 (D.D.C. Feb. 6, 2023).

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is

relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Freeman be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

### III. The Government Has Not Met Its Burden of Proving That Mr. Freeman Poses a "*Serious*" Risk Of Flight Under § 3142(f)(2)(A).

Mr. Freeman should be released on conditions because there is not a "serious risk that [he] will flee" the jurisdiction under § 3142(f)(2)(A). Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something more.

According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great*

*Oregon*, 515 U.S. 687, 698 (1995) (noting interpretation of statute should be reluctant to treat statutory terms as surplusage). Indeed, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements. *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021) (citing *United States v. Gibson*, 384 F. Supp. 3d 955, 965 (N.D. Ind. 2019)) ("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). A risk of flight suggests an intentional and active effort to put oneself outside of the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances. *Id.* Further, if a case does not involve a "serious risk" of flight then the government's request for detention fails at step one. *Id.* "The ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct." *United States v. Ailon-Ailon*, 875 F,3d 1334, 1338 (10th Cir. 2017).

The BRA's legislative history also makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[1] For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978). The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and

---

[1] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances . . . justifies pretrial detention*"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

no such showing has been made here.

Moreover, the "[m]ere opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Bail Reform Act authorizes detention "only upon proof of a likelihood of flight." *Id.* at 160. The "preponderance must, of course, go to the ultimate issue: that no combination or conditions -- either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful -- can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In this case, there is no reason to believe that Mr. Freeman is a "serious" risk or that there are no conditions of release which would be sufficient to assure his appearance. Mr. Freeman is a native of the greater DMV area and has strong ties in the area. Indeed, this Court's pretrial services office has confirmed that Mr. Freeman's mother, who lives in Baltimore, is a suitable third-party custodian should this Court release him. Moreover, Mr. Freeman has a six-year-old son whom he supports and has custody of during the weekends. And though Mr. Freeman briefly spent time in Alabama while attending Alabama A&M University, he has no other connections outside the area and has no history of flight.

The D.C. Circuit has held that a defendant's ability to flee the country based merely on ties to a foreign country, without evidence that he is *likely* to flee, cannot serve as the basis for pretrial detention. *See Xulam*, 84 F.3d at 443. In *Xulam*, the court rejected the government's contention that the defendant -- an immigrant from Turkey who was charged with falsifying information on a passport and who had only been in the country for three years -- should be denied bail because nothing could stop him if he decided to flee. *Id.* at 444. The Court explained: "That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for

determining whether pretrial detention is appropriate. Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *Id.*; *see also United States v. Himler*, 797 F.2d 156 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention."); *Motamedi*, 767 F.2d at 1408 (revoking detention order for an Iranian citizen accused of illegal arms deals who allegedly had large bank accounts abroad and an ability to return to Iran with impunity). This was true in *Xulam*, even when the defendant was charged with passport fraud, suggesting at least a willingness to seek false documents that would allow him to leave the United States.

There is not even evidence here of connections to another country, let alone financial resources to demonstrate an ability to flee. The government has not demonstrated that Mr. Freeman presents a *likelihood* of flight – and he, in fact, does not present a serious risk of flight. In fact, Mr. Freeman's lack of resources with which to flee is evidenced by his eligibility for court-appointed counsel in this case.

Furthermore, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. The government has not met its burden to seek detention of Mr. Freeman as a "serious risk of flight" and, as stated below, there are conditions that can reasonably ensure his appearance at court.

**IV.    The Government Did Not and Cannot Meet Its Burden to Demonstrate that Mr. Freeman is a Danger to the Community.**

The D.C. Circuit reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government did not meet its burden here and it still cannot meet its burden. Mr. Freeman should therefore be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Freeman's appearance at trial and protect the public.

　　A.　　*The Nature and Circumstances of the Offense*

The Indictment charges Mr. Freeman with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g). There are no allegations that Mr. Freeman used or brandished the firearm, or even carried the firearm. The firearm is alleged to have been recovered from a backpack in a vehicle that Mr. Freeman was standing outside of. Officers were not summoned to the area due to a 911 call or report of firearm use. The allegations that Mr. Freeman possessed a firearm are not alone clear and convincing evidence to justify his detention as a danger to the community. In fact, individuals charged with firearms offenses have been repeatedly released in this District, including in cases (unlike here) where the defendant was found with other contraband, allegedly fled from police, or even discarded the firearm. *See, e.g., United States v. Abass*, No. 25-cr-79 (defendant allegedly fled and tossed firearm; drugs found in search of his

person); *United States v. Gaskins/Gaines*, No. 25-cr-39 (both defendants released; both alleged to have fled and tossed firearms); *United States v. Belton*, No. 25-mj-51 (defendant charged with 924(c) and possession with intent to distribute); *United States v. Robinson*, No. 24-cr-95 (defendant fled from police; on probation at the time of arrest); *United States v. Yates*, No. 24-cr-89 (defendant charged with 924(c) and possession with intent to distribute cocaine; alleged machinegun switch); *United States v. Griffith*, No. 24-cr-56 (defendant fled from police); *United States v. Wiggins*, No. 23-cr-109 (defendant fled from policed and tossed firearm; firearm fitted with a "giggle switch"); *United States v. Jones*, No. 23-cr-154 (defendant fled from police; case later dismissed after suppression hearing); *United States v. Hicks*, No. 19-cr-288 (firearm allegedly tossed).

Courts have also released individuals in firearm cases where the person was on probation or parole at the time of the arrest. *See, e.g., United States v. Mickens*, No. 25-cr-48; *United States v. Vines*, No. 25-cr-91.

Judge Bates recently upheld a release decision in a firearms case and specifically noted that the possession of a firearm alone does not justify detention.

> The nature and circumstances of the offense charged do not strongly show that Bryant is a flight risk or a danger the community. While § 922(g)(1) involves firearms, courts have recognized that it is not a crime of violence under the BRA. *See generally, e.g., United States v. Gloster*, 969 F. Supp. 92 (D.D.C. 1997). Additionally, the government alleges only that Bryant possessed—not that he used—the firearm at issue. . . . The Court acknowledges the inherent danger that a loaded firearm presents but finds that the allegations here do not weigh heavily in favor of pretrial detention.

*United States v. Bryant*, No. 25-cr-97, ECF No. 15 at 2. The nature and circumstances of the case do not require detention in this case.

Likewise, this Court upheld release of a defendant who, like Mr. Freeman, did not have the firearm on his person, was not alleged to have used or brandished the gun, and was "not alleged to

have resisted arrest or anything of the sort." *United States v. Timothy Clark*, No. 25-cr-113 (BAH), Apr. 24, 2025, minute order. In addition, because there are possible defenses against the charge, Mr. Freeman is "incentivize[d] . . . to remain and face the charge." *Id.*

  B.  *The Weight of the Evidence*

  The weight of the evidence is just one factor, and it should be considered against the presumption of innocence. Mr. Freeman is innocent until proven guilty and too much consideration of the weight of the evidence flies in the face of that important constitutional protection. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

  Here the weight of the evidence is not overwhelming. Mr. Freeman was standing outside of a vehicle where a firearm was found in a bag in the passenger compartment. The firearm was not alleged to have been on Mr. Freeman's person. And though identification cards belonging to Mr. Freeman were found in a different pocket in the bag, there were also two other individuals who were near the car with Mr. Freeman when they were stopped by officers. The weight of the evidence is not clear and convincing evidence of danger to support detention.

  C.  *The History and Characteristics of Mr. Freeman*

  Mr. Freeman's history and characteristics demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community. Mr. Freeman has significant ties to the community, including his young child, parents, and siblings. Should this Court release Mr. Freeman, he intends to live with his mother in Baltimore. He is gainfully employed at Two Men and a Truck, a moving company. In addition, he works with his parents as a contractor, doing work sealing driveways. This work is seasonal, typically starting when the weather rises above 50 degrees. Mr. Freeman relies on this work, which is beginning to pick up, to support his six-year-old son. He is a hard worker, who is dedicated to providing for his family.

The government also drastically overstates Mr. Freeman's criminal history. Two of the offenses of conviction were gun possession offenses in Maryland. Specifically, Mr. Freeman was convicted of transporting a handgun on a roadway in 2016 and unlawfully possessing a firearm in 2018. Mr. Freeman's third conviction is for conspiracy to commit robbery, for conduct that occurred in 2018. The government argues that all of Mr. Freeman's offenses of conviction are firearm related, but the government provides no evidence of Mr. Freeman's use of a firearm in the robbery conviction. And given that the government cannot show that Mr. Freeman used or even possessed a firearm in relation to that offense, this Court cannot draw such an inference.

In concluding that Mr. Freeman would not abide by conditions set by the court, Magistrate Judge Upadhyaya relied on the fact that Mr. Freeman's probation was closed unsatisfactorily in two of the offenses mentioned above. The government, however, failed to provide any information as to why Mr. Freeman's probation was closed. But as undersigned counsel argued in the detention hearing, there are many reasons why probation can be unsatisfactorily closed that are unrelated to criminal conduct. For example, if a defendant fails to pay fines, or timely report on a regular basis, or commits some other type of technical violation, the sentencing court could ultimately decide to terminate probation as unsuccessful. And importantly here, Mr. Freeman's probation had been revoked at least once specifically because of new criminal charges. That his probation was revoked and it the reason was explicitly noted on the pretrial services report should lead this Court to conclude that dangerous conduct or other bad acts were not the reasons for the termination of Mr. Freeman's probations as unsuccessful.

Finally, Mr. Freeman is seeking release under much more stringent conditions than he was under as part of his probation, specifically he requests high intensity supervision. Mr. Freeman has not been convicted of violent past offenses and his criminal history does not demonstrate that

he is a current danger or risk of flight, which is what the government must establish to justify detention. Mr. Freeman's history and characteristics do not provide clear and convincing evidence to support his pretrial detention.

> D.  *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Freeman's Release*

The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Freeman would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Freeman currently poses an unmitigable threat to public safety. Instead, the government again relies on the alleged possession of a firearm and a civil protective order lodged against Mr. Freeman two years ago. None of the government's arguments demonstrate clear and convincing evidence that Mr. Freeman is presently a danger to the community.

In granting the government's motion to detain, Magistrate Judge Upadhyaya relied "heavily" on the allegations in a petition for a civil protective order against Mr. Freeman. In the request for a protective order, dated July 2023, Katice Starnes, the mother of Mr. Freeman's child alleged that Mr. Freeman hit and choked her. She also requested that the court, among other things, order Mr. Freeman to stay away from her. *See* Ex. 1.

Mr. Freeman agreed to the order without admitting to the allegations in the petition. The conditions required, importantly here, that Mr. Freeman not commit or threaten to commit crimes against Ms. Starnes and enroll in and complete certain counselling programs. Notably, the court concluded that Mr. Freeman "met [his] burden to prove that visitation w[ould] not endanger" the

couple's child "or significantly impair" their child's emotional development. Ex. 1, p. 8. In the almost two years since the order was issued, there have been no allegations that Mr. Freeman has acted in a way that could cause harm to others. In addition, Mr. Freeman spends every weekend with his child who "adores" him. Ex. 2, Apr. 24, 2025 Statement of Katice Starnes. Ms. Starnes also notes that Mr. Freeman has "never put [their child] in harms way." *Id.* And when their child "returns from his dads' [sic] house, he's always doing something new using big words expressing himself always has a great story to tell especially about how much he loves his dad." *Id.*

In sum, there are conditions of release that can ensure the safety of the community. At the time of the alleged offense, Mr. Freeman was not being actively monitored by a probation or other related office. But upon release, Mr. Freeman will be under the custody of his mother as a third-party custodian, and he will be sworn to conditions much more stringent than those typically imposed at sentencing.[2]

### E.    Past Similar Cases That Resulted in Pre-trial Release

While the Court cannot and should not require that counsel provide an example of a similarly situation person who was released in the past to justify release, especially in a case where there is a presumption of release like this one, magistrate and district judges in D.D.C. have released individuals in the recent past with similar charges and circumstances.

First, in *United States v. Joseph Robinson*, No. 24-cr-95 (TSC), Mr. Robinson was alleged to have fled from the police after throwing a loaded gun, was on probation for Assault with a Deadly Weapon, and drugs were also found in his vehicle. Mr. Robinson was released.

Second, in *United States v. Paul Mickens*, No. 25-cr-048 (AHA), Mr. Mickens was released

---

[2] At the May 2 detention hearing in this case, undersigned counsel made Ms. Nikki Freeman available for questioning under oath, which the court refused. Should this Court request or require, undersigned counsel can again make Ms. Freeman available for questioning.

even though he had a parole detainer because he was also under supervision. Mr. Mickens was also accused of running from police and had three prior convictions.

Third, in *United States v. Timothy Clark*, No. 25-cr-113 (BAH), Mr. Clark was released even though he was on probation for a prior offense of conviction at the time of the alleged offense. In addition, when Mr. Clark was stopped, he was driving despite not having had valid driving privileges.

### V.   Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Freeman Does Not Pose A Serious Risk of Flight or Danger to the Community.

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[3] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[4] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[5] The below chart reflects this data:

---

[3] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[4] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* AO Table H-14A.

[5] *See* AO Table H-15; AO Table H-14A.



### VI. Mr. Freeman Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.

Mr. Freeman must be released because there are conditions that will reasonably assure the safety of the community and Mr. Freeman's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government cannot carry its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. The government also cannot prove by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Freeman's appearance in court. Thus, Mr. Freeman should be released.

The following conditions of release under § 3142(c)(1)(B), and any other conditions this Court deems necessary, will reasonably assure Mr. Freeman's appearance in court and the safety of the community.

- High Intensity Supervision Program;

- Maintain or actively seek employment, *id*. § 3142(c)(1)(B)(ii);

- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);

- Comply with a curfew, *id*. § 3142(c)(1)(B)(vii);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Mr. Freeman's appearance in court and the safety of the community, he should be released.

## VII.   Conclusion

For the foregoing reasons, and for any other reasons this Court may determine at a hearing on this motion Mr. Freeman respectfully requests that this Court release him with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Tezira Abe
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500