UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | | 25-CR-127-BAH |
| v. | : | |
| STEPHAN FREEMAN | : | |

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

Mr. Stephan Freeman, through the undersigned counsel, respectfully moves this Honorable Court to suppress the use of at trial the physical evidence found in the vehicle at issue. Mr. Freeman respectfully requests an evidentiary hearing on this motion.

### Background

On April 21, 2025, Mr. Freeman and two other men were standing near a gold Lexus SUV on the 5000 Block of C Street SE. Officers driving down C Street pulled up alongside the SUV after allegedly seeing one of the men near the SUV smoking what they believed to be a marijuana cigarette. Within seconds, Mr. Freeman and the other men were cut off by three police vehicles cornered by eight members of the Metropolitan Police Department. The officers used their vehicles and their bodies to prevent Mr. Freeman from walking away. The third man, in fact, attempted to walk away and was immediately detained by MDP officers. *See* Def. Ex. 1, Hinostroza BWC.

While the officers discussed the marijuana cigarette with the second man, at least one officer—Officer Welsh—began searching the car. After Officer Welsh claimed to have seen an open bottle, Officer Hinostroza, began searching the car indiscriminately. Def. Ex. 1. He searched a backpack from the car, inside of which he found a gun as well as credit cards and identification attributed to Mr. Freeman.

Mr. Freeman was subsequently charged with unlawful possession of a firearm in Superior

Court. On April 25, 2025, a complaint related to the April 21 arrest was filed in this court. ECF 1. On April 29, 2025, Mr. Freeman formally appeared in front of a magistrate judge of this court. On May 1, 2025, an indictment was returned charging Mr. Freeman with one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C § 922(g)(1). ECF No. 8.

## Argument

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As such, "[i]t is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so." *New York v. Belton*, 453 U.S. 454, 457 (1981). Because warrantless searches and seizures are presumed to be unreasonable, law enforcement officers generally must first obtain a judicial warrant before searching a person or a person's property for evidence of criminal wrongdoing. *See Riley v. California*, 573 U.S. 373 (2014). In the absence of a judicial warrant, a search will be deemed reasonable only if it falls within a specific exception to the warrant requirement. *Id.*; *see also United States v. Vinton*, 594 F.3d 14, 19 (D.C. Cir. 2010) (Generally, searches "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993))). The exclusionary rule thus requires suppression of evidence obtained in violation of this guarantee. *See United States v. Weaver*, 808 F.3d 26, 33 (D.C. Cir. 2015) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) and *Weeks v. United States*, 232 U.S. 383, 398 (1914)).

One of the delineated exceptions to the warrant requirement permits law enforcement to

conduct a limited search incident to a lawful arrest.  In *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court held "that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested of the immediately surrounding area." *Belton*, 453 U.S. at 457.  This includes, to some extent, areas and containers "from within which [the defendant] might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763.  But "the safety and evidentiary justifications underlying *Chimel*'s reaching-distance rule determine *Belton*'s scope." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). And "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Id.*

Limiting the scope of a search incident to arrest to the area from which a suspect might gain possession of a weapon or destructible evidence "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Gant*, 556 U.S. at 339 (citing *Chimel*, 395 U.S. at 763).  "To determine whether a warrantless search incident to an arrest exceeded constitutional bounds, a court must ask:  was the area in question, *at the time it was searched*, conceivably accessible to the arrestee—assuming that he was neither "an acrobat [nor] a Houdini."  *United States v. Lyons*, 706 F.2d 321, 330 (D.C. Cir. 1983) (emphasis added).  "And where the 'justifications for the search-incident-to-arrest exception are absent,' the exception does not apply." *United States v. Wills*, 316 F. Supp. 3d 437, 449 (D.D.C. 2018) (quoting *Gant*, 556 U.S. at 339).

The product of a search incident to an arrest is not admissible if the arrest itself was not lawful under the Fourth Amendment.  "[T]he requisite predicate to this exception is a valid and lawful arrest supported by probable cause." *Wills*, 316 F. Supp. 3d at 446; *Dunaway v. New York*,

442 U.S. 200, 213 (1979). In determining whether an officer had probable cause to arrest an individual, federal courts "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *See Wills*, 316 F. Supp. 3d at 446 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). When the government arrests a defendant without probable cause, "the Court must exclude any evidence obtained as the fruit of that search or seizure." *United States v. Sheffield*, 799 F. Supp. 2d 22, 28 (D.D.C. 2011), *aff'd*, 832 F.3d 296 (D.C. Cir. 2016) (citing *Wong Sun*, 371 U.S. at 484).

When a defendant has been seized or searched without a warrant, "the burden shifts to the government to justify the warrantless" action. *United States v. Weaver*, 808 F.3d 26, 33 (D.C. Cir. 2015) (quoting *United States v. Jones*, 374 F. Supp. 2d 143, 147 (D.D.C. 2005). This burden is not without meaning. When a defendant moves to suppress the fruits of a warrantless search and seizure, the government is obligated to justify every aspect of any stop, arrest, or search. A failure to do so is a concession that the officers in question acted in violation of the Fourth Amendment. A defendant, in turn, has no obligation to theorize about or otherwise anticipate the government's justifications for its warrantless actions.

Mr. Freeman was arrested the moment he, and the other two men, were surrounded by MPD vehicles and officers and were no longer free to leave. While officers may have had probable cause to arrest the man holding the marijuana cigarette, they did not have even reasonable suspicion to stop Mr. Freeman at all.

When officers detain a person and the detention becomes unduly intrusive, the detention "transforms from an investigative stop into an arrest requiring probable cause." *Hall v. D.C.*, 867 F.3d 138, 153 (D.C. Cir. 2017). "The point at which an investigative stop becomes an arrest is not

marked with a bright line." *Id.* The number of officers involved and the use of vehicles to block off exits can transform a stop into an arrest. *United States v. Devaugh*, 422 F. Supp. 3d 104, 115 (D.D.C. 2019). "[T]he magnitude of such police activity will compel the conclusion an arrest had occurred." *Id.*

Here, eight MPD officers surrounded Mr. Freeman and two other men—blocking off their ability to leave—to investigate a single marijuana cigarette being smoked by one man. There can be little doubt that such a show of force was unduly intrusive to investigate the alleged offense—public consumption of marijuana. And there is no question that the three men—even the two men who were not holding any contraband—were not permitted to leave.

Regardless of whether Mr. Freeman was arrested or stopped, officers had no authority to do so. While MPD Officers may have had probable cause to arrest the man holding the marijuana cigarette, the officers had no authority at all to detain Mr. Freeman. To detain Mr. Freeman the officers would have needed at least reasonable suspicion that Mr. Freeman was committing a crime. But no such suspicion existed. It is indisputable that standing near someone who is smoking a marijuana cigarette is not a crime. And even if officers have reasonable suspicion of one individual in a group, it does not give them carte blanche to stop the entire group. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

The eventual search of the SUV, and the tangible evidence obtained therein, are therefore fruits of Mr. Freeman's unlawful arrest. And the tangible evidence must be excluded. *Sheffield*, 799 F. Supp. 2d at 28.

In the complaint, MPD officers justify searching the backpack as a search incident to arrest.

This was not, however, a valid search incident to arrest because at the time of the search, Mr. Freeman was handcuffed and physically held by two officers outside of the car while the search occurred on the other side of the vehicle.

When a police officer conducts a lawful arrest, the arresting officer may search the arrestee's person and the area within his immediate control from which he might gain possession of a weapon or destructible evidence. *See United States v. Williams*, 669 F. Supp. 3d 8, 20 (D.D.C. 2023). But "if there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent the rule does not apply. *Id.* (quoting *Wills*, 316 F. Supp. 3d at 448). This applies to bags and containers as well. When an arrestee cannot have gained access to a backpack, "the search[] of the backpack cannot be justified as [a] search[] incident to arrest." *Id.* If an arrestee "would have had to engage in significant acrobatics in order to gain access to the contents of his backpack at the time it was searched," the search incident to arrest exception does not apply. *Wills*, 316 F. Supp. 3d at 449 (citing *Lyons*, 706 F.2d at 330).

"[W]hether or not a closed backpack or bag can be searched incident to arrest depends on a fact-intensive assessment of the totality of the circumstances," including:

- Whether the defendant was handcuffed or otherwise restrained at the time of the search
- The location of the backpack in relation to the defendant at the time of the search
- Whether the defendant was difficult to restrain or had resisted to arrest
- Whether the arresting officer had reason to suspect the defendant was armed
- Whether there were other officers nearby to surround or assist in supervising the defendant at the time of the search
- The thoroughness and length of the search

*Wills*, 316 F. Supp. 3d 437, 449 (D.D.C. 2018).

All of these factors support the conclusion that Mr. Freeman could not have reached the bag at the time of the search. At the time of the search, Mr. Freeman was handcuffed with his hands behind his back (which he did not resist) outside vehicle, and physically surrounded by five MPD officers. And the arresting officers had no reason to suspect that Mr. Freeman was armed or dangerous. The totality of the circumstances indicate that Mr. Freeman would have had to somehow break free of the officers detaining him, jump through a partially opened driver's side window, and somehow reach into the backpack—which appeared to be closed—all while his hands were handcuffed behind his back. Surely not even "Houdini" could have managed this. *Lyons*, 706 F.2d at 330. The search of the bag, therefore, was not a search incident to a lawful arrest.

Courts in this circuit consistently apply the rule that when an arrestee is physically restrained and incapable of reaching a bag at the time the bag is searched, any search of the bag cannot be justified as a search incident to a lawful arrest. In *Williams*, the court concluded that a warrantless backpack search was not a search incident to arrest because the arrestee was restrained, and officers were preventing him from moving while the backpack was being searched. In *Wills*, the court concluded that a backpack search was not a search incident to arrest because the arrestee was handcuffed with his cuffed wrists and arms behind his back at the time of the search. This is consistent with courts nationwide. *See United States v. Shakir*, 616 F. 3d 315 (3d Cir. 2010); *United States v. Cook*, 808 F.3d 1195 (9th Cir. 2015); *United States v. Davis*, 997 F.3d 191 (4th Cir. 2021); *Greenfield v. United States*, No. 23-CM-0433, 2025 WL 1074329 (D.C. Apr. 10, 2025).

### Conclusion

Officers had no probable cause to arrest Mr. Freeman, much less reasonable suspicion to stop him, and the warrantless search of the backpack is not authorized by any delineated exception to the warrant requirement. For these reasons and any such other reasons as may be presented at

a motions hearing, Mr. Freeman respectfully requests this Court suppress the use of at trial all physical evidence.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Tezira Abe
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500