UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 25-CR-127-BAH |
| STEPHAN FREEMAN | : | |

### REPLY TO GOVERNMENT'S OPPOSITION

The government insists that Mr. Freeman was not arrested until he was in handcuffs and that evidence of a simple misdemeanor gave law enforcement license to search every nook and cranny of his car. The Fourth Amendment requires that courts hold law enforcement to a higher standard by forbidding wanton warrantless searches of private property. The Court must suppress the tangible evidence gathered from the warrantless search of Mr. Freeman's car.

### I. MR. FREEMAN WAS DETAINED WITHOUT CAUSE

Mr. Freeman and the two other men were detained without reasonable suspicion by eight officers because one of them appeared to be smoking a marijuana cigarette in public. The government asserts that this detention was a "consensual encounter" and Mr. Freeman was not arrested until he and the other two men were placed in handcuffs. Fourth Amendment precedent says otherwise. Mr. Freeman was baselessly detained because a person who happened to approach his car was smoking a marijuana cigarette.

A person is seized in terms of the Fourth Amendment when because of an officer's show of authority, "a reasonable person would have believed that he was not free to leave." *United States v. Gross*, 784 F.3d 784, 787 (D.C. Cir. 2015). To answer this question, a court must consider "all the objective circumstances of the encounter," rather than examining individual facts in isolation. *United States v. Lewis*, 921 F.2d 1294, 1297 (D.C. Cir. 1990). Facts to consider when deciding whether an encounter amounted to a Fourth Amendment seizure include: the time of day,

1

the location of the encounter, the officer's tone, whether weapons or handcuffs were displayed, if officers were wearing a uniform, whether the officer physically touched the individual, whether the officers threatened or intimidated the individual, whether the officers retained the individuals identification, what commands the officer gave during the encounter, the number of officers involved, and whether officers had blocked the individual's path. *United States v. Jones*, 374 F. Supp. 2d 143, 148 (D.D.C. 2005).

It is obvious that a reasonable person standing in for Mr. Freeman, accounting for all the circumstances of the encounter, would believe that he was not free to leave. The number of officers involved in this encounter alone is sufficient to qualify this encounter as a seizure under the Fourth Amendment. The government attempts to frame the interaction as a single officer approaching Mr. Freeman and speaking with him. But that ignores the totality of the circumstances. In reality, eight officers approached Mr. Freeman's vehicle, surrounding it on all sides. Five officers began the encounter on the side of the vehicle with Mr. Freeman while three officers were on the opposite side of the vehicle with the man who had been in the passenger seat. And to the extent the government relies on its assertion that "two other[ officers stood back watching], ECF No. 26 at 9, that is not the case. No officer "stood back watching." All eight officers at some point actively participated in the arrest of Mr. Freeman. And even the officers who allegedly "stood back watching" were preventing Mr. Freeman and the other two men from leaving by blocking any exit.

Further, eight officers were unnecessary to address a single man allegedly consuming marijuana in public. While eight officers may be necessary to address a violent situation between a group of individuals—or even in a situation where many individuals are individually suspected of committing a crime—that is not the case here. Here a single man was allegedly smoking a single marijuana cigarette. Eight officers were gratuitous. It is unclear why anything more than

2

one officer is necessary to issue a citation to the man smoking the cigarette. The number of officers, therefore, weighs heavily in favor of finding that Mr. Freeman was immediately detained.

The conversation between the officers and Mr. Freeman and the man who was smoking also weighs in favor of finding that Mr. Freeman was seized immediately. The first thing that occurs when Mr. Freeman is approached is that Officer Perez demands his identification. *See* Def. Ex. 2 Perez BWC. *See Gomez v. Turner*, 672 F.2d 134, 142 (D.C. Cir. 1982) (considering a demand for identification in assessing a Fourth Amendment seizure). There is no effort to greet Mr. Freeman in a cordial manner like would happen in a consensual encounter. And within seconds of surrounding the SUV, an officer announces that "smoking in public is an arrestable offense." Def. Ex. 2. While the officers may have conveyed their demands and threatened arrest in a relatively calm tone, there is no doubt that the officers were making it clear that Mr. Freeman and the other men were not free to leave. No reasonable person would believe that they were free to leave an encounter with the police after being surrounded and told that they were approached for something "arrestable."

Finally, the government implies that a reasonable person would feel like they could terminate the encounter with eight police officers because "[n]othing prevented the defendant from driving away." This argument is absurd. First, it is a clear recognition of the fact that the officers were preventing Mr. Freeman from *walking* away. Indeed, the passenger who had been in the vehicle—who like Mr. Freeman was not seen smoking or with contraband—did try to walk away and three officers on the other side of the car prevented him from leaving. Any reasonable person watching a companion with no apparent culpability be stopped from leaving would know that he, also, is not able to leave. Second, the idea that Mr. Freeman could have simply jumped in the car and driven away distorts the reality of police encounters. Because officers often consider a driver

3

behind the wheel to be operating a dangerous weapon, *see e.g.*, *Smith v. United States*, 843 F.3d 509, 513 (D.C. Cir. 2016), the thought of a man surrounded by eight officers hopping into a car, turning it on, wishing the officers a nice day, and driving away is nonsensical. Regardless, "officers need not totally restrict a citizen's freedom of movement in order to convey the message that walking away is not an option." *United States v. Delaney*, 955 F.3d 1077, 1083 (D.C. Cir. 2020). No reasonable person in Mr. Freeman's situation "would feel free to disregard the police and go about his business." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (internal quotation marks and citation omitted).

Moreover, the cases relied on by the government to argue that the circumstances of Mr. Freeman's arrest do not amount to arrest actually indicate the opposite. The defendant in *United States v. Gross*, 784 F.3d 784, 786 (D.C. Cir. 2015), unlike Mr. Freeman who was surrounded and had nowhere to turn, was able to walk away from officers. And the holding in *United States v. Goddard*, 491 F.3d 457, 461 (D.C. Cir. 2007), relied not on officers' presence but that there was nothing in the record showing they "impeded Goddard's movement." Nor are *United States v. Meekins*, 2019 WL 3802944, at *4 (D.D.C. Aug. 13, 2019), or *United States v. Lea*, 839 F. App'x 551 (D.C. Cir. 2020), applicable. The defendant in *Meekins* was not immediately surrounded by officers with nowhere to go but instead was approached by officers that were "driving slowly alongside Defendant . . . and separated by a row of parked cars." *Meekins*, 2019 WL 3802944, at *1. And despite the similar public location, time of day, and tone of voice in *Lea*, the officers' weapons were concealed and officers had not restricted the defendant's movements. *Lea*, 839 F. App'x at 553. The same cannot be said for Mr. Freeman who was surrounded by eight uniformed police officers, all with firearms on display, who began the encounter by immediately

4

demanding identification and threatening arrest.

Instead of *Gross* and *Goddard*, the facts here are more analogous to cases where courts have found that surrounding a defendant on all sides restricts his movement amounting to a seizure under the Fourth Amendment. *United States v. Mabry*, 997 F.3d 1239, 1245 (D.C. Cir. 2021) (defendant was seized when his "avenues of egress were at least partially restricted by the officers" and officers already "prevent[ed] one of his associates from leaving"); *United States v. Delaney*, 955 F.3d 1077, 1083 (D.C. Cir. 2020) (parking police vehicles close to a defendant and approaching defendant from both sides restricted movement amounting to a seizure); *United States v. Bryant*, 111 F.4th 105, 110 (D.C. Cir. 2024) (defendant was seized when officers "blocked [defendant's] path from both directions"); *United States v. Carter*, 2020 WL 3893023 at *4 (D.D.C. July 10, 2020) (finding defendant had been seized when officer's "blocked [his] path and prevented him from going about his business by positioning themselves in front of and behind him.").

Mr. Freeman was surrounded on all sides by three police vehicles and eight police officers in tactical gear displaying handcuffs and firearms. The officers demanded identification, threatened arrest, and prevented Mr. Freeman's companion from walking away. *See Mabry*, 997 F.3d at 1245 (considering the effect of an associate's attempt to leave). Mr. Freeman clearly was

not free to leave.  Any reasonable person would have felt the same.





The government then refuses to engage with Mr. Freeman's argument that even if officers had cause to stop the man who was allegedly smoking a marijuana cigarette, there was no articulable suspicion of Mr. Freeman's activity to stop him. The government relies on two cases about traffic stops for the concept that because "all three men were associated with the defendant's SUV by being in or around it, police were entitled to stop all three men under *Terry*." ECF No. 26 at 9 n.1. But this detention was not a traffic stop.

A traffic stop occurs when a law enforcement officers "seize the vehicle (pull it over) for a traffic infraction." *United States v. Howard*, 66 F.4th 33, 41 (1st Cir. 2023); *United States v. Turner*, 287 F. App'x 426, 428 (6th Cir. 2008). Here, officers approached Mr. Freeman and two other individuals standing near a car that was parked and turned off. The cases relied on by the government permit law enforcement to detain everyone in a vehicle to affect a traffic stop because of the unique circumstances of enforcing traffic laws. Those circumstances are not present here. Law enforcement, therefore, must have individualized suspicion as to each person they are detaining.

The government argues that Mr. Freeman was lawfully arrested "based on probable cause when officers found an open container of alcohol in the defendant's SUV." But it is not that simple. The government states that Officer Welsh saw "in plain view a bottle of alcohol," ECF No. 26 at 10, and cites cases for the proposition that shining a flashlight into a car does not violate the Fourth Amendment. But Officer Welsh did not just shine his flashlight into the car. He physically placed the flashlight inside the vehicle. Def. Ex. 3, Welsh BWC. By breaking the plane of the car window, Officer Welsh violated Mr. Freeman's right to privacy. *United States v. Powell*, 483 F.3d 836 (D.C. Cir. 2007) (acknowledging that breaking the plane of a vehicle is a search); *United States v. Stanfield*, 109 F.3d 976 (4th Cir. 1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106

7

(1977) and *Maryland v. Wilson*, 519 U.S. 408 (1997)).

And for contraband to be viewed in "plain view" the object's "incriminating nature must be readily apparent." *Horton v. California*, 496 U.S. 128, 134 (1990). The incriminating nature of the bottle in the back seat was anything but readily apparent. Indeed, Officer Welsh informed another officer that he did not know what was in the bottle. Def. Ex. 3. And it is clear from the footage that because the bottle was behind the backpack, no officer would be able to see what was in the bottle, or even know that the bottle was not sealed. Def. Ex. 4, Joseph BWC. As de minimis as this violation may seem, it is a constitutional violation nonetheless. And everything that follows from this breach must be suppressed. *United States v. Spinner*, 475 F.3d 356, 359 (D.C. Cir. 2007) ("A search not justified when it is begun cannot be used to elicit evidence with which to justify the search after the fact.").

Mr. Freeman was detained without cause the moment he was surrounded by eight police officers and was not permitted to leave. To conclude otherwise would endorse police action of detaining groups of people for the actions of a single person. As anyone living in the District knows, public consumption of marijuana is commonplace. If mere proximity to someone smoking marijuana justifies officers detaining anyone near the smoker, then a large percentage of the district is subject to wanton detention at any time. The Fourth Amendment does not condone such a rule.

## II.     THE SEARCH OF THE SUV AND BACKPACK WERE UNREASONABLE

The government insists that the officers were permitted to search the SUV incident to the lawful arrest of Mr. Freeman for possession of an open container.[1] This is not the case, however,

---

[1] The government references, in a single sentence, the automobile exception to the Fourth Amendment discussed in *California v. Acevedo*, 500 U.S. 565, 580 (1991). The government, however, makes no further reference to the automobile exception and has therefore forfeited any argument that the automobile exception authorized the search of the SUV.

8

because it was unreasonable for any officer to believe that searching under the seats or in a backpack would reveal additional evidence of possession of an open container.[2]

Under *Arizona v. Gant*, officers may search the "passenger compartment of an arrestee's vehicle and any containers therein," when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. 332, 343–44 (2009). "[T]he officer's assessment of the likelihood that there will be relevant evidence inside the car must be based on more than 'a mere hunch.'" *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010). And such a reasonable belief does not necessarily justify the search of car writ large. Instead, it must be based on "the likelihood that 'evidence of a crime will be found in a particular place.'" *United States v. Taylor*, 49 A.3d 818, 826 (D.C. 2012) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

And the D.C. Circuit has held officers to this standard. In *United States v. Washington*, 670 F.3d 1321 (D.C. Cir. 2012), officers conducted a traffic stop and noticed a strong smell of alcohol emanating from a vehicle, saw a small amount of red liquid in an open cup, and a puddle of liquid on the floorboard near the driver. Based on these observations and the defendant's intoxicated appearance, the Circuit credited that a reasonable officer could conclude that appellant had poured liquid from the cup while driving and gave the officers a reasonable basis to search the

---

[2] The government asserts that Mr. Freeman confined his argument to whether he was within reaching distance of the backpack at the time of the search. ECF No. 26 at 12. This is a fundamental misunderstanding of where the burden lies on a motion to suppress. In asking the government to justify a warrantless search, a criminal defendant has no obligation to predict how the government will attempt to justify the search. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951). A defendant, therefore, cannot forfeit any argument in his motion to suppress. And the cases relied on by the government to argue otherwise concern whether arguments not raised at all in any briefing are forfeited or when arguments are forfeited on appeal. They are inapplicable to this case. Regardless, Mr. Freeman argued in his opening brief that the search of the vehicle and backpack was not authorized by *Arizona v. Gant*. In the alternative, the government has not contested that Mr. Freeman was not within reaching distance and has therefore forfeited any argument that the search was justified because Mr. Freeman could have reached into the backpack while being arrested.

car for evidence of that offense. *Id.* at 1325. Only because they had objective basis for concluding that further evidence of an open container would be found in the car were officers permitted to search the car incident to an arrest. *Id.*

Here, after officers discovered the opened bottle of brown liquor and the red solo cup appearing to contain brown liquor, officers no longer had any justification for further searching the car. There was certainly no reason to believe that further evidence of the open container would be present in a backpack in the driver's seat. An objective officer would have no reason to continue searching at this point because any further search would not be based on anything but a mere hunch.

Officers had no reason to search the car beyond retrieving what was ultimately an opened bottle of liquor and the cup which allegedly contained liquid from that bottle. They certainly had no reason to search a backpack for further evidence. There is no reason to think that someone possessing an open container of alcohol has hidden other open containers of alcohol in the car because alcohol, unlike narcotics, is not an illicit substance in unto itself. To find otherwise would subject every person who chooses to drive home from a restaurant with a re-corked bottle of wine to a search of every inch of their vehicle after being pulled over for speeding. The Fourth Amendment requires that the officer's actions be reasonable and particularized, and here, the officer's decision to search a backpack for evidence of an open container was anything but.

## Conclusion

No reasonable person would believe that he was free to terminate an encounter with law enforcement after being surrounded by eight officers, hearing that an arrestable offense had been committed, and seeing a companion be stopped from leaving. Mr. Freeman, therefore, was detained without cause the moment officers surrounded his car, and the fruits of the later search

10

must, therefore, be suppressed. In the alternative, the fruits of the search must be suppressed because it was completely unreasonable for an officer to conclude that he would discover further evidence of possession of an open container of alcohol inside a backpack when the bottle of liquor had already been recovered. The fruits of the search of the backpack, therefore, must be suppressed.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
Matthew L. Farley
Tezira Abe
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500